All right, we have our final case of this morning. Uh, in Ray Louis N. Deloso. Mr Sullivan, when you're ready. Thank you, Your Honor's James Sullivan of Wendell's Marks Lane and Mittendorf Council for Strategic Funding Source, Inc. Doing business as a capitalist appellant in this manner. May it please the court. There's a lot of issues on appeal and I'm going to, rather than sort of recite all the issues, I'm going to try to get to the heart of what I think you'll be most concerned about, or at least I'll give you my perspective on on how I kind of see things. Um, so the court below rendered decision, assuming the facts in my client's favor. So the decision below is a decision of law, not of, there's no factual findings whatsoever, and so the matter before Your Honor is, um, before the court is going to be a de novo review, um, based on the record. Uh, and the law, it's largely a legal question. Not for issue here is, is rule 4,007C subject to equitable tolling or not? How did 4,007C fit with, uh, 9006B and, uh, with section 105? Correct, Your Honor. Correct. And the way I kind of like, I try to kind of like formulate it in my mind because, uh, the, because of the various statutes at issue here and the rules, it's a little bit, um, windy and there's a lot of different things that the court had to address in order to, uh, rule against my client. So what I thought might be very, very helpful is if I just sort of, um, really briefly kind of ticked off for you what I think the judge decided. Um, and, and the first thing that the judge decided is, um, and what the appellee, uh, argues is that nutraceuticals, the nutraceutical case by the Supreme Court closes the door on us. Okay. Um, but what I would like to say is that the door is already open because we have the conjure case by the Supreme Court, um, which allowed for, uh, an exception to 9006B based upon a forfeiture. A waiver theory. Okay. Um, so the, the question then becomes how, how far is the door open? Uh, conjure itself didn't address the question. It specifically said in there, it says, okay, we're not going to address the question about whether there might be other equitable, um, exceptions to rule 9006 and 4007C. We'll leave that for another day. So that's really what we're here for. Um, and so then the question becomes, okay, the issue we've been talking about in terms of equitable tolling. And really there are, there are two types of equitable tolling. Uh, I didn't address it in the, in the brief, but, um, the U.S. Supreme Court recently decided the case of Ratkinski versus Clem. And, uh, um, the, in that, in that case, um, the court didn't really address it, but I think they highlighted the fact that there are two types of, of, of equitable tolling, um, in the context of what we're really talking about. One would be more of a general, um, tolling based upon things like, uh, uh, the, the fact that the, um, the other party, the creditor, for example, in the situation, uh, didn't learn of certain facts. Um, it, it could also encompass things like excusable neglect. Okay. And so in that case, uh, the court actually addressed that issue, uh, in the, in the Ratkinski case, but they did not address the second form of equitable tolling. And that's based upon, um, situations where there's a fraud. And we did cite a few cases in our papers, uh, dealing with a fraud issue. Um, for example, uh, the Holmberg versus Armbrecht. And we also cited, um, in a slightly different context, uh, the Third Circuit case of, uh, Borges versus Gonzalez. Um, so in that case, uh, and, and Judge Ginsburg in her dissent in the Ratkinski case, and I would, I can get you, I can send you later on the citation for that. But, um, she kind of outlines a whole series of case law, which talks about, uh, treating fraud cases really different from the, the typical, um, equitable tolling case. Can we go back to New Jersutical for, for a moment? Sure, Your Honor. Because the, the issue of, you know, as to whether there's room for equitable tolling or not, uh, there was certainly plenty of briefing, um, on the issue there. Uh, and, uh, you know, yet the court, uh, it didn't end up relying on that, right? It, it didn't make mention of equitable tolling. Why shouldn't we be looking to the text here of the rules and whether, even if it's not, um, uh, apparent, uh, in, uh, you know, the, uh, statute, uh, or the, one of the rules. If we look to others that tell us, uh, by reference that it's limited to those circumstances, that that forecloses equitable tolling. Uh, what, so, yes, and that's basically what the court below did. They looked to, like, for example, New Jersutical, um, arguing that the, the, um, appeal statute, the appeal rule, rather, in that case, Rule 23, that it was similar enough, I guess, to the Rule 9006B. Obviously, we argued in our papers that the rules is slightly different. Uh, we think that the rule, the appellate rule, Rule 23, was much more emphatic. Um, New Jersuticals is unlike a couple of the other, uh, uh, um, cases that we cited, uh, the Supreme Court cases that we decided that, uh, discuss other factors. Um, you know, one of the things, if you, if you think about New Jersuticals, that case really is not very similar to our case at all on the facts. And we think that our case is very, is much more similar, for example, to Condrick and Marama, which talk about, um, um, a forfeiture exception. Uh, both, both Marama and Condrick used the word forfeiture. And the forfeiture exception deals with a situation where, and I'm just going to use the word debtors, because even though in these other contexts, you know, it could be a plaintiff versus defendant. But, um, so, and that's, in this kind of a context, you have a debtor or a party who forfeited the rights to, um, raise the defense of 9006B or some other rule or statute with, or really it's a rule, um, which creates a bar to a party such as us, uh, in terms of bringing our claim. Um, so, in, in this situation, you have, like, there's actually a good quote from Marama, um, it says, a statutory provision protecting a borrower from waiver is not a shield against forfeiture. On the contrary, the broad authority granted to the bankruptcy judges to take any action that is necessarily appropriate to prevent an abusive process described in Section 105 of the Code is surely adequate to authorize. And in that case, it was to, um, deny the debtor the ability to convert his case from Chapter 13 to Chapter 7. Mr. Sullivan, I'm, I'm trying to understand your analytical structure here, because it seems like there are two issues. The first one is, how clearly does this rule appear to preclude forfeiture or waiver or, or, or toll leg or, or any other exceptions? And here, 9006B3 says, here's a list of rules that you're supposed to follow the specifics of the rule. So, you haven't been making a textual argument, 9006B3, so I think your argument now is the second part, which is, what's the level of clash between Section 105 in the Code and the rules? And we agree, the cases make clear if there's a conflict, how clear it has to be that the statute trumps the rules. But how express is the conflict between the statute and the rules? So, are you making an argument of the text of the rules? I want to know. And then what is your argument about how, how direct the conflict is between the statute and the rules? Okay. So, um, good question. You're honest. I was trying to, I was trying to go about it a long about way to sort of explain the arguments that I have. They're really independent arguments. So, 105, I think it's certainly a factor to consider when you're analyzing, you know, the conflict situation that you're talking about or how, how one should think about 9006B. Should you, given 105, should you interpret 906B sort of a little bit more narrowly, not to impinge upon 105A? That's certainly a way to think about it. But I also think that 105 is like an independent basis, aside and apart from what you think about 9006B, you could rely solely, the court could have relied solely upon, in my opinion, 105A to sanction the debtor by denying him a discharge or by granting the, our client the ability to at least try to demonstrate that its claim should be non-dischargeable. So, I kind of view those as a separate issue. So, before you ever get to the 105 issue, you can certainly consider the 105A issue as a factor in determining how narrowly or broadly you should interpret 9006B. But aside and apart from that, I think just based upon, you know, looking at the Marama line of cases as well as the law, and I don't, I don't interpret law to be really inconsistent with Marama all that much. I think the main difference between Marama and the law case is that, you know, Marama was a 5-4 decision. You know, law was a 9-0 decision. And the difference was that four of the members of the court in the Marama case thought that the Marama decision was actually impinging upon 706A of the bankruptcy code, right? There was a difference of opinion about whether or not the ruling actually, you know, the ruling was going to interfere with the, you know, the minority actually found that it was a direct contradiction to 706A. So, that's not an argument here because we're not dealing with a statute. We're dealing with a rule. So, there's not, so in that sense, law and Marama both support our client's position because we're not dealing with a statute, an inconsistent statute. We're dealing with only an inconsistent, potentially inconsistent law. And so, you know, our argument is, you know, we went through in a fair amount of detail trying to explain that, well, look, you know, they're really, the language of 906B given 523, you know, doesn't really prohibit it. And, you know, 906B, you know, it's not as clear as certainly the statute in Rule 23, which was much more, in our view, was much more direct in terms of precluding you from getting relief. But we think that, at a minimum, you should be factoring in the fact that, you know, and this is one of the primary mistakes I think the judge below made was the judge found that 4007C and 9006B precluded him from granting us the relief that we're seeking, yet in the same breath said that, you know, he didn't find there was an inconsistency between making that decision and refusing to grant us any relief under 105A. To me, those, you know, those are contradictions in my view. That was, you know, kind of a fatal flaw in the decision below is that he didn't give any real deference or weight to 105A. Did 105A override other provisions of the code and the rules? 105 is kind of a cat's call, it's kind of nothing else works. Throw 105 up against the wall and see if it sticks. Oftentimes, yes. You know, oftentimes, yes. A lot of times the courts will say, and you'll find like hundreds of decisions which say that 105A doesn't really say a whole lot. What it really does is it gives teeth to some of these other statutes. But I will say I think there's an exception to that because 105A does have a whole separate line of cases where you're dealing with fraud upon a court, right? Because 105A gives the court teeth to basically compel the litigants before it to be accountable to the court, right? So if the court doesn't interpret 105A. But not in the face of a conflicting statute that has and rules that have specific provisions, does it? Well, it's not a conflicting statute, but it's a potentially, I'll give you that, you know, it's arguably an inconsistent rule. But it's not a rule. It's not a statute. And I think that's a key difference, right? Because, you know, 105A is out there and courts all across, you know, the country are interpreting 105, you know, putting this issue apart, right? If you weren't dealing with a 4007C and 9006B issue, you have numerous instances where a court relied upon 105A and or the inherent authority of a court to sanction a debtor by, amongst other things, denying the debtor a discharge. And you have, there's numerous cases of that. In fact, the law decision itself lists, that's the first thing that says what a court can do in enforcing 105A. One of the things it can do, the first on the list was we can deny the debtor discharge, right? You also have another case, you know, again, another case I didn't cite, but Inouye-Francis of the First Circuit, which recently decided 996F310. Another case where a bankruptcy court suesponse denied a debtor a discharge and dismissed the case for the debtor's refusal to obey lawful orders. Mr. Sullivan, I understand your 105 arguments. I just want to make sure, while you didn't expressly address 727, do you agree that the, in terms of just the analytical framework, the questions that we're asking about the effect of the rules and whether they are caboting the limitations period as to 4007C and 906B3, as they relate to 523, we essentially have the same issues that, the same questions that we're asking as to 9024 in relation to 727. All right, well, 727, no, we didn't pursue that one on appeal because that's a situation where you have a statute on point, whereas 9006B is a rule. So the statute, you know, the courts treat that differently, right? So we, you know, we decided not to pursue an appeal of the part of the decision dealing with 727 because we thought that, you know, frankly, we wouldn't win on it. But in terms of the significance, the effect of the rule, like 9024 and the way that interacts with the period specified in the statute, that's essentially the same kind of analysis, the same question that we're dealing with and looking at the way the other rules have in 523. Well, the deadline, the deadline, there is a deadline in 727. So that sets it apart from what we're talking about. So here, the only deadlines that we're talking about on appeal are found in rules, which is 4007C and 9006B. So 727 has its own deadline. So that's why we couldn't appeal or we felt like we couldn't appeal the denial of discharge generally, right? So we're only seeking to pursue a non-dischargeability finding with respect to our claim based on 4007C. Because again, if 4007C had been in a statute, I think we would have had a much harder argument, right? We'd only be relying on 105A. And in terms of just very briefly, because I know we've also kept you over time, but in terms of the alternative forum, what is the current status of the New York action? I know during briefing, we were at summary judgment. It was pretty far advanced. Where is it today? So we moved for summary judgment. We're in the process of preparing our reply briefs. There's the motion is returnable. I believe it's the first week of May. It's unclear exactly when that would be decided. And is there any concrete relief that you don't get there that you would get if your case reopened? Right. Well, we're primarily seeking relief against BARI under successor liability theory and related to that, I guess, a fraudulent transfer theory. So if for some reason the court found that we didn't meet the New York test for successor liability based on what could be some technicality or otherwise, then we would want as a fallback the ability to request that the court allow a trustee to be appointed to administer that asset in the bankruptcy court. So we would be happy if, you know, the order at the end of the day just had a provision in it that basically says, look, go to New York, see what happens. If you don't get the relief that you're looking for, you know, at least you have the ability to come back to us and make another motion to reopen, to administer the asset if we're not able to address it in a New York proceeding. So it was unclear to us whether or not the decision below kind of foreclosed that possibility. We're not saying that it did or it didn't. But we kind of raised it out of an abundance of caution because we would like that opportunity if for some reason the New York litigation doesn't go the way we're hoping. And we're not able to satisfy the criteria under New York law for a successor liability. Okay. Thank you. Thank you. Mr. Sanchez. Good afternoon, Your Honors. Casey DeSantis from Fox Rothschild on behalf of Appellee Louis DeLoso. May it please the court. I would like to try to simplify the two issues discussed by Mr. Sullivan. I'll begin with the first issue on appeal, which is appellant contends that the bankruptcy court somehow erred by holding that rules 4007C and 9006B preclude equitable tolling. And we heard Mr. Sullivan today talk about the contract decision and forfeiture. And contract is extremely important here. I agree. Contract held that bankruptcy rules 400 and 4C and 407C are non-jurisdictional. And whether a time period is jurisdictional or non-jurisdictional goes to the court's adjudicatory authority. So if a time limitation is non-jurisdictional, it then can be forfeited, which is what rule 4007C is. Appellant's briefs try to set forth a different standard. And that is the standard that is used to distinguish between jurisdictional rules and non-jurisdictional rules. The nutraceutical decision is important because that evaluates whether a time period is a mandatory claim processing rule. So that's the distinction here. The issue before the court was whether it had already been decided that 4007C was non-jurisdictional. So that's not the issue. The issue is whether it's a mandatory claim processing rule. So nutraceutical clearly applies to the issue. Under nutraceutical, the court looks at whether there's a clear intent to preclude equitable tolling. And if so, then courts are without the authority to apply those equitable considerations. The rules here clearly preclude equitable considerations. Rule 4007C gives a party 60 days after the 341 hearing to file a complaint under Section 523. That time period can be extended only upon motion that is filed before that timeline expires. Rule 9006B goes on to say that the court may enlarge the time for taking action only to the extent that the conditions are followed in 4007C. So the rules are very clear. They certainly demonstrate an intent to preclude equitable tolling. Another important note about contract is that in footnote 10, contract expressly recognized that Rule 9006B was very similar to and actually based upon the same Federal Rule of Civil Procedure Rule 6 as Federal Rule of Appellate Procedure 26B, which was the rule at issue in nutraceutical, and Federal Rule of Criminal Procedure Rule 29C, which was the rule at issue in the Carlisle decision. And so appellant contends that Rule 9006B is distinguishable from Federal Rule of Appellate Procedure 26B, but that has already been expressly rejected by contract. So what about 105? Sure, 105. 105 is kind of the catch-all provision. Throw it at the wall, see what sticks. But 105 certainly does not allow the bankruptcy court to override statutory provisions. It has been interpreted to allow the implementation of other statutory provisions. And I think that's a big distinguishing factor here. My colleague would say this is a rule, not a statute. Does that make a difference as far as you're concerned? I think case law has made a difference of that before. I don't think that it makes a difference here. The intent of this rule is to carry out a statutory provision. So it simply provides timelines. It doesn't limit the statutory provision. It still allows for the relief available. That relief just needs to be timely filed. And I think this is a really slippery slope if the court makes a distinction here. If all time limits in rules were determined to be in conflict with a statute, that's problematic. At what point do we stop enforcing time limits because they're in conflict with statutes? I also want to briefly touch upon appellant's contention that the court erred by relying upon the pending New York State court action. As we heard from Mr. Sullivan today, the state court action has progressed. It is at the summary judgment phase and we have fully gone through discovery. It has been a strenuous litigation. This litigation can accomplish all of appellant's goals. There's no need to relitigate this in the bankruptcy court forum. And as you heard from Mr. Sullivan today, they're simply seeking this to get two bites at the apple in case they don't get the relief they want after fully litigating their case. They want to now come to the bankruptcy court and go through the whole thing again. That's inefficient. It's not fair. There's a fresh start policy and expected finality of the bankruptcy court code. So I think that's important considerations here as well. Unless your honors have any specific questions for me, I just respectfully request that the court affirm the bankruptcy court's decision. Thank you. Thank you. You reserved time? I don't think I announced it, but I did try to reserve it when I checked in. I won't even need that much. I just wanted to respond to two things, if that's okay. I apologize. So the first thing I wanted to kind of stress is if you read the brief, you know, like I had mentioned before, we did cite the Holmberg and the Borges cases for the proposition that, you know, equitable tolling based upon fraud and fraud upon the court is really a different kind of animal of equitable tolling. And in response to that, the debtor did not really respond other than to say that they didn't commit fraud, right? If you read the decision below, the court assumed that the debtor had committed fraud. And so there really was no effort to really try to distinguish those lines of cases which treated equitable tolling based upon fraud or fraud upon the court as a different kind of animal of equitable tolling. So I just wanted to kind of highlight that. And then the other thing that I wanted to point out is the other- Usually objections to discharge, I mean, a lot of them would be based on fraud. Well, here is very different because it's a lot of cases deal with pre-petition fraud, but this is post-petition fraud. So even in the law case, I think, for example, there was some discussion about how if a court were to make a, you know, a sanction based upon post-petition fraud, the court could enter a judgment and the litigant could pursue and enforce the judgment even though, you know, the debtor is in bankruptcy and got a discharge. So fraud upon the court, you know, it's a post-petition issue which is a very different animal than your more run-of-the-mill pre-petition fraud. So, you know, here you have a situation where the debtor not only committed pre-petition fraud, but he continued the fraud after the bankruptcy filing by lying on his bankruptcy schedules and not disclosing to the court, numerous opportunities to disclose to the court, right, that he had the ownership interest in this business. And yet every step along the way, he hid that from the court and misrepresented his assets to the court. And, you know, so that, you know, what my friend on the other side said was it sets a dangerous precedent to kind of open the door to allowing these litigations to continue. I would actually argue the opposite. To me, it sets a dangerous precedent if you allow debtors to file for Chapter 7, mislead the court with the hope that they'll be able to mislead the court for at least 60 days, get a discharge, and then hope to get away with it. And then the court is left without any remedies to address it. So, you know, to me, that's a much more dangerous precedent is to, if the court does nothing, then we're really just telling debtors, you know, take your shot, you know, lie about your assets. If you can do it for long enough, you'll get away with it. And I think that's the dangerous precedent that we don't want to set here. And so for that reason, we would ask the court to overturn the decision below and rule in favor of the appellant. Thank you both. Thank you for your patience through a long morning. Thank you. Thank you. We appreciate briefing and arguments, and we will take this case under advisement.